RACHEL EDWARDS, appellee, v. DES MOINES TRANSIT COMPANY, appellant.

No. 49847

(Reported in 99 N.W.2d 920)

164

DECEMBER 15, 1959.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellant.

Glanton & Glanton and Duffield, Pinegar & Spencer, all of Des Moines, for appellee.

LARSON, C. J.—Plaintiff was injured while riding as a passenger on defendant's bus. Her petition was in two counts, Count I being based upon general negligence under the doctrine of res ipsa loquitur and Count II on specific allegations of negligence. At the conclusion of plaintiff's evidence and upon defendant's motion to strike, she withdrew Count II. A verdict was returned in the sum of $2000 for plaintiff. The court overruled defendant's motions to direct, for judgment notwithstanding the verdict, and for a new trial, and defendant appeals.

Defendant relies upon four assignments of error, but the sole issue involved is whether under the evidence plaintiff had established a prima-facie case for the jury under the doctrine of res ipsa loquitur.

I. We need not explore the entire field of res ipsa loquitur in order to determine its lack of applicability here. It is a doctrine of limited and restricted scope ordinarily to be applied sparingly and with caution and only where the facts and demands of justice make its application essential. 65 C. J. S., Negligence, section 220(10), pages 1031, 1032; Shinofield v. Curtis, 245 Iowa 1352, 1361, 66 N.W.2d 465, 50 A. L. R.2d 964. While a common carrier of passengers is bound to exercise the utmost care consistent with the operation of its business, it is

not an insurer of their safety. Waterloo Sav. Bk. v. Waterloo, C. F. & N. R., 244 Iowa 1364, 1367, 60 N.W.2d 572, and authorities cited.

■■ Every injury to a passenger aboard a common carrier does not raise the inference of company's negligence. Cahill v. Illinois Central R. Co., 148 Iowa 241, 246, 125 N.W. 331, 28 L. R. A., N. S., 1121; 35 Iowa Law Review 393. The accident causing the injury must be such as in the ordinary course of things does not happen if those in charge of the vehicle use proper care. Sample v. Schwenck, 243 Iowa 1189, 1198, 54 N.W.2d 527, and citations; 65 C. J. S., Negligence, section 220(8), page 1007; 38 Am. Jur., section 295, page 989. It is, therefore, the primary duty of the injured party to disclose facts which in law are recognized as those that speak for themselves or disclose a situation wherein it may be said that, but for defendant's negligence, the injury and damage could not have occurred. Walters v. Des Moines City Railway Co., 191 Iowa 196, 179 N.W. 865; Wheeler v. Des Moines City Railway Co., 205 Iowa 439, 215 N.W. 950, 55 A. L. R. 473. Stated otherwise, in this type of case the plaintiff only needs to show that the injury resulted from some irregular or unusual operation or movement of the passenger carrier, the nature of which the defendant has or is charged with knowledge.

■ It is true we have also said the doctrine of res ipsa loquitur is a rule of evidence originally based on the theory that he who has charge of the thing that causes the injury either knows the cause of the accident or has the best opportunity of ascertaining it. Brown v. Sioux Building Corp., 248 Iowa 948, 83 N.W.2d 471, and citations; 38 Am. Jur. 995, section 299; Savery v. Kist, 234 Iowa 98, 103, 11 N.W.2d 23, 25; Van Heukelom v. Black Hawk Hotels Corp., 222 Iowa 1033, 1043, 270 N.W. 16, and cases cited.

■ In Stites v. Des Moines Transit Co., 249 Iowa 185, 188, 85 N.W.2d 905, 906, we explained it this way: "Simply stated it is a rule of evidence. It is that where injury occurs by an instrumentality under exclusive control and management of the defendant and the occurrence is such that in the ordinary course of things it would not happen if reasonable care were used, the happening permits but does not impel an inference that defend-

ant was negligent. Shinofield v. Curtis, 245 Iowa 1352, 1360, 66 N.W.2d 465, 50 A. L. R.2d 964, and cited authorities."

In the record before us we find that defendant does not deny that the bus and all its mechanical devices attached were under its exclusive control. However, it points to the rule in Stites v. Des Moines Transit Co., supra, that in such cases there is also the necessity for plaintiff to show that the *fall* was due to some out-of-the-ordinary operation of the bus which would give rise to an inference of its negligence.

The only witness who testified as to the occasion was plaintiff herself. Mrs. Edwards said: "I rang the bell to get off by reaching up and pulling the cord. He drove by where he was going to stop. The bell sounded and I got up. I got to get up, I walked down the seat to get up, and *the bus looked like it jerked*. [Emphasis supplied.] I don't know how it happened but it just jerked and when that bus jerked it just threw me. I didn't have any holds. I was off balance and just threw me right back just like that and it just hit me right across the center of my back and my neck * * *." She also said: "I don't remember hardly anything, it was done so quick. I fell against a rod in the street car." In answer to the question, "What made you fall?" she replied: "Just from the shock of the bus, I think it was. It just looked like it jerked and I had to let loose of the thing you pull, * * * I wasn't holding on that anymore, and then the bus just gave a jerk or something. I don't know what it was that happened but it just happened so quick I don't know what had happened until I got into the telephone company."

On cross-examination she testified: "I was facing the front of the bus *at the time I lost my balance* to get out from the front door. The jerk that I referred to happened so quick that I didn't know what happened, whether it was a jerk in the starting or stopping of the bus. The bus was moving when I rang to get off. That was when the trouble started. I guess the jerk was in stopping. I don't know what happened. * * * At the time I got up off my seat, trying to get off, I was facing the front. The bus was moving and it jerked there somewhere, I don't know. * * * It did not throw me back in my seat. * * * I never did drop down. I hit my back against the seat in front of me. The one I sat in didn't have no bar across." (Emphasis supplied.)

We have set out the pertinent part of her testimony. It discloses that when plaintiff realized the bus had arrived at Ninth and High Streets, she arose, pulled the cord to alert the driver that she wished to alight, and as she proceeded toward the aisle and exit before the actual stop, she lost her balance and fell against an iron rod in the bus. She retained no hold on anything to steady herself against the normal and usual motions of a bus being brought to a stop.

It is defendant's position that, even viewing the testimony in a light most favorable to plaintiff, this evidence falls far short of disclosing an unusual or extraordinary operation of the bus or such an operation as would justify the submission of that factual issue to a jury. We did say in the Stites v. Des Moines Transit Company case, supra, that from "common experience" it is known that one may, and often does, trip, stumble, and even fall, while a passenger on a streetcar or bus which is being operated normally, and that such incidents frequently happen in the ordinary course of things, irrespective of what the defendant did or did not do. It is also true that such circumstances would scarcely meet the test of disclosing a situation where the demands of justice make the application of presumed negligence essential.

█ Plaintiff claims the severity of her injury was evidence of the violence of the jerk. However, the severity of one's injury will not itself raise the inference of defendant's negligence, although such evidence may be admissible in support of other direct evidence of unusual or violent operation of a passenger carrier. Oklahoma Railway Co. v. Jones, 207 Okla. 476, 250 P.2d 472, 474. In Dodge v. McFall, 242 Iowa 12, 14, 45 N.W.2d 501, 502, we held no presumption of negligence arises from the mere fact of an injury, and furthermore the doctrine does not raise any presumption as to what did occasion the injury.

█ II. Thus it must be said that it is not what caused the jerking of the bus in the case at hand, or the injury suffered, but the severity, unusualness, and out-of-the-ordinary operation that must be shown to permit a presumption or inference of negligence.

In Fitch v. Mason City and Clear Lake Traction Co., 124 Iowa 665, 671, 100 N.W. 618, 621, we discussed the importance of plaintiff's burden in res ipsa loquitur cases and concluded;

"Most of the cases seem to hold that unless the jerk, jar, or lurch of the car is extraordinary or unusual in character, no presumption of negligence arises."

In other words, the nature of the occasion or accident from which an inference of negligence may arise must first be established by plaintiff. Such a showing is not usually satisfied by circumstantial evidence, particularly when, as here, the plaintiff was in as good a position as anyone to state the facts upon which she claims a presumption of negligence arises. It was her duty to produce substantial proof of an unusual occurrence or an out-of-the-ordinary event in the operation of this passenger carrier. That fact could not be left to speculation or surmise, and under the most liberal view of the doctrine it must either be shown by the plaintiff or she must produce evidence tending to prove that such information was in the sole and exclusive knowledge of the defendant. 9 Wigmore, Evidence, Third Ed., section 2509, page 382; Frost v. Des Moines Still College, 248 Iowa 294, 300, 79 N.W.2d 306.

Plaintiff-appellee does not dispute these propositions of law, but contends that her testimony did sufficiently establish an unusual occurrence or jerk of the bus which caused her fall.

On the other hand, defendant-appellant argues plaintiff by her own testimony was uncertain as to what did occur to cause her to fall back into the iron rod. It points out that at no place in her testimony does she say the alleged jerk was violent, unusual, or out-of-the-ordinary. Defendant further contends there was no evidence that it knew of the alleged accident until the following day, and that plaintiff failed to produce available evidence in the form of testimony of the other three passengers on the bus at the time. Although failure to call these witnesses has no bearing on the issue here, it seems they might well have been helpful to plaintiff in her burden of showing an unusual, out-of-the-ordinary and irregular operation of the bus at that time, if such was the case.

As it was, the only testimony in the record regarding the alleged fall was furnished by the plaintiff herself, and it left much to be desired, especially on the vital issue involved. Being an employee of the Broadlawns Hospital, she boarded on inbound West Ninth Street bus at that place about 2 p.m. Two or three

other employees came aboard at the same time. They were still on the bus when plaintiff fell while preparing to leave it near the telephone office at Ninth and High Streets. Plaintiff said she did not know their names, but she knew they worked in the hospital kitchen and it is evident their identity could have been established.

Plaintiff first advised the driver of defendant's bus of her fall and injury when she entered the bus the next morning to return to her work at the hospital. Due to pain in her back and neck she was unable to do her work and was hospitalized from August 9, 1956, to August 23, 1956, and from September 18, 1956, to September 29, 1956. After her release she did not return to her employment. Being nearly 70 years of age, she has been retired on Social Security.

Under this record we are satisfied that plaintiff's testimony itself did little more than show that the bus jerked, lurched, and swayed in the usual and normal manner. The conclusion that, without aggravation, she simply lost her balance while moving out into the aisle before the bus stopped, and fell backward, is not in conflict with her testimony. Thus we must conclude that the evidence produced was not sufficient to require that defendant assume the burden and go forward with the proof that its operation of the bus was not negligent. Until that time arrived, there was no jury question.

As to the authorities cited, it is sufficient to say we have considered the references carefully and find therein no statement or application of the doctrine in conflict with our decision herein. Perhaps the most applicable pronouncement is made in Shinofield v. Curtis, supra, 245 Iowa 1352, 1360, 66 N.W.2d 465, 50 A. L. R.2d 964, where we said that in considering whether a particular occurrence is such as would not happen if reasonable care had been used, the answer rests upon "common experience." See Eaves v. City of Ottumwa, 240 Iowa 956, 970, 38 N.W.2d 761, 769, 11 A. L. R.2d 1164.

Common experience teaches us that city buses continually jerk and lurch as they travel their routes, and that they usually stop and start with something less than smooth and even operation. In spite of the fact that plaintiff had ridden buses in Des Moines for years, and must have been aware that stops were

seldom so smooth that one could arise from his seat without holding fast to some solid fixture, she did not offer testimony that the stop was unusual, out-of-the-ordinary, or unnecessary. Even the slightest jerk or lurch could well cause a passenger on his feet to stagger or fall if he was unsupported, and the occurrence of that event and a resultant injury itself, we think, could not in justice lead to the conclusion that such would not have happened if reasonable care had been exercised by defendant's driver. If that should be our holding, such carriers would truly be insurers. The doctrine does not go that far in this jurisdiction. In fact, we think plaintiff's testimony taken in its most favorable light falls short of creating any negligence on the part of the driver, much less of disclosing a situation and occurrence in which negligence will be presumed on the part of defendant-company.

Having so decided, we think defendant's motions filed herein to dismiss and to grant it judgment notwithstanding the verdict should have been sustained. The judgment is, therefore, reversed.

Reversed and remanded with directions to sustain motion for judgment notwithstanding.

All JUSTICES concur.